602 So.2d 1111 (1992)
Preston T. PRIETO, Jr., et al.
v.
ST. TAMMANY HOMESITES, INC. and St. Tammany Development Company.
No. 91 CA 1091.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
*1112 Thomas R. Caruso, Slidell, for defendants-appellants.
Philip E. Pfeffer, Covington, Ernest Prieto, Mandeville, for plaintiffs-appellees.
Before WATKINS, CARTER and FOIL, JJ.
*1113 CARTER, Judge.
This is an appeal from a trial court judgment in a possessory action.

FACTS
On or about September 25, 1985, petitioners, Preston T. Prieto, Jr. and Jerry Prieto Jackson, filed a possessory action against defendants, St. Tammany Homesites, Inc. and St. Tammany Development Company, Inc. In their possessory action, petitioners claimed that they were in possession of certain immovable property in St. Tammany Parish and that a deed, dated October 2, 1918, from Whitaker Riggs to St. Tammany Development Company, Inc. and another deed, dated April 19, 1984, from St. Tammany Development Company, Inc. to St. Tammany Homesites, Inc. disturbed petitioners' possession. Defendants filed a reconventional demand, asserting their own possessory action.
After trial, the trial judge rendered judgment in favor of petitioners and against defendants, recognizing petitioners' possession of the immovable property and requiring defendants to assert title to the property via a petitory action within sixty days from the date the judgment becomes executory. From this adverse judgment, defendants appeal. Petitioners filed an answer to defendants' appeal, requesting damages for frivolous appeal.

POSSESSORY ACTION
The elements of proof in a possessory action are set forth in LSA-C.C.P. art. 3658 as follows:
To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.
Verzwyvelt v. Armstrong-Ratterree, Inc., 463 So.2d 979, 982 (La.App. 3rd Cir.1985).

A. POSSESSION.
The possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed or to be restored to the possession or enjoyment thereof when he has been evicted. LSA-C.C.P. art. 3655; Verzwyvelt v. Armstrong-Ratterree, Inc., 463 So.2d at 982. A possessor for purposes of the possessory action is defined in LSA-C.C.P. art. 3660 as follows:
A person is in possession of immovable property or of a real right therein, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper.
The requisite possession to entitle one to bring the possessory action is identical to the possession which is required to commence the running of acquisitive prescription. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766, 773 (La.1975); Boneno v. Lasseigne, 534 So.2d 968, 972 (La.App. 5th Cir.1988); Romar v. Estate of Gay, 454 So.2d 431, 434 (La.App. 3rd Cir.1984). The elements and characteristics of the possession necessary to maintain a possessory action vary with the nature of the property and other attending relevant circumstances. Verzwyvelt v. Armstrong-Ratterree, Inc., 463 So.2d at 982. What constitutes possession in any case is a question of fact, and each case must rest upon its own peculiar circumstances. Verzwyvelt v. Armstrong-Ratterree, Inc., 463 So.2d at 982.
Generally, the possession necessary to maintain a possessory action must be either corporeal possession or civil possession preceded by corporeal possession by the plaintiff or his ancestors in title. LSA-C.C.P. art. 3660; Verzwyvelt v. Armstrong-Ratterree, *1114 Inc., 463 So.2d at 982. The corporeal possession required in a particular case is "governed by the nature of the land and the use to which the land is put." Cheramie v. Cheramie, 391 So.2d 1126, 1130 (La.1980). With regard to the possession requisite for the commencement of acquisitive prescription, LSA-C.C. art. 3476 provides that the possession must be continuous, uninterrupted, peaceable, public, and unequivocal. Boneno v. Lasseigne, 534 So.2d at 972.
It is a well-established principle of law that physical occupancy of any part of a tract specifically described in a deed with the intent to possess the whole will constitute possession of all the property included therein. Verzwyvelt v. Armstrong-Ratterree, Inc., 463 So.2d at 983. The possessor of land claiming ownership by possession rather than title must have uninterrupted possession with the intent to possess as owner. Romar v. Estate of Gay, 454 So.2d at 434.

B. DISTURBANCE.
A disturbance in fact is defined in LSA-C.C.P. art. 3659 as follows:
A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment.
A disturbance in law is defined in LSA-C.C.P. art. 3659 as follows:
A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right.

C. BURDEN OF PROOF.
In a possessory action, the burden of proof is upon the plaintiff to establish the essential elements thereof. LSA-C.C.P. art. 3658; Chaney v. State Mineral Board, 444 So.2d 105, 108 (La.1983); Romar v. Estate of Gay, 454 So.2d at 433. Moreover, the question of whether the acts of the Prietos constitute possession is a factual determination made by the trial court which will not be disturbed on appeal unless it was clearly wrong. Romar v. Estate of Gay, 454 So.2d at 433; Meche v. Graham, 421 So.2d 461, 464 (La.App. 3rd Cir.1982).
In the instant case, the trial judge gave the following oral reasons for judgment:
The record establishes and this Court finds from the evidence that the plaintiffs actually started possessing this property from tax sales in the year of 1940.... The defendant and plaintiff in reconvention acquired  that's St. Tammany Homesites, Inc.  acquired the property from St. Tammany Development Company, Inc. on April 19, 1984 by deed recorded in the records of the St. Tammany Parish Clerk's office.
We have some conflicting testimony, but by and large, the testimony is not in conflict concerning the possession. The Court finds that the plaintiffs did exercise the following possession of this property: In 1958, a Richard J. Freshwater, who is an expert in the field of forestry, performed a ten percent timber cruise for the plaintiffs over all of the property, or other property including subject property owned by the plaintiffs pursuant to a timber sale for Mr. W.C. Rasberry.
In 1958, there was a timber option granted by the plaintiffs to Mr. W.C. Rasberry, and on November 21, 1958, the plaintiffs sold timber to Mr. Rasberry. Mr. Rasberry cut this timber over a period of six years. There's some discussion as to how much timber was cut on this property. However, the record does support that there was timber cut on the actual subject property as well as other portions of property owned by the plaintiff.
In approximately 1949, the plaintiffs removed pine stumps on subject property.

*1115 In 1962, the plaintiffs had Mr. Robert Berlin, an expert land surveyor, survey other property and the subject property. This took him 10 to 15 days. He did actually survey the subject property while surveying the remainder of the property owned by the plaintiffs.
In 1949, the plaintiffs gave or sold a right-of-way to the State of Louisiana for the widening of the highway which fronts this property. Actually, it goes along 200 feet of this property.
In between the years 1946 and 1949, Mr. Preston Prieto, Jr. squirrel hunted on the subject property.
In 1974, Mr. Prieto determined he was going to build on this site and cleared a building site measuring approximately 145 by 192 feet. He then built a roughly 150 foot road into the cleared site through the subject property from a ... gravel road  known as Hotsy Totsy Road. He posted the entire property for no hunting, and he cleared the western and southern boundary lines. He, I suppose in conjunction with his son, cleared a small three-wheeler or some type of off-road vehicle track around the property which went around the cleared property. This track extended quite a bit on the subject property and then laid a course on to the adjoining property. This property  this track was used by Mr. Prieto's son many times to ride a three-wheeler vehicle.
In addition, Mr. Prieto built a small path back to a small-type pond which was indicated in the exhibits which he used to bird watch.
In 1977, the plaintiffs granted a one year lease for a billboard to U.S. Homes for compensation. This billboard was in existence for two and a half to three years.
In addition, the plaintiffs granted mineral leases on the property in 1961, through '69 and '76 and '81. They have paid taxes on the property since 1942. Mr. Prieto also built a culvert or installed a culvert connecting this 150 foot road to his cleared house site with the Hotsy Totsy Road.
Young Don Prieto testified that from 1985 to '87 he cut Christmas trees on the property and that there was other evidence that various members of the family would maybe walk on the property, which, during this time period, the Court does not give much credence to insofar as showing the possession.
Mr. Woodrow Taylor, who's present, of St. Tammany Homesites, testified that he placed four corners of the property around June of 1982. Of course, the placing of these corners is not an obvious  the Court does not see this as an obvious placement of corners. He has not testified that some big sign was put up in four corners, just that the corners were marked.
Then Mr. Taylor testified that he went on the property from time to time following the posting of those four corners. He has been on Lot 52, according to his own statement, between five and six times. He has shown the property for sale. This would be since he acquired the property in 1984. This is not much possession insofar as walking on the property.
Mr. Taylor also testified that he posted a for sale sign when he bought the land, which would have been in 1984, and he took prospective purchasers to this property. The Court does not doubt that Mr. Taylor posted this property, but there is other testimony in the record that no for sale sign was seen on this property.
We have a piece of property measuring 200 by ... 1070, and the Court feels that the record supports and the Court, therefore, finds that the posting of a real estate sign was not an obvious act of possession.
The defendant entered into an agreement to sell on August 29, 1985, which was not recorded insofar as the record shows, which did not result in a sale because of the lawsuit. So other than showing that Mr. Taylor was actually  other than proving that Mr. Taylor was actually showing the property, this agreement to sell cannot be given much weight insofar as possession is concerned.

*1116 There is testimony that the defendant and plaintiff in reconvention paid the property taxes from 1982 to 1990. Therefore, the Court is placed with the situation of a piece of property acquired by the plaintiffs and possessed in great detail by the plaintiffs.
When the defendant acquired the property in 1984, the record does not support that the possession of the property exercised by the defendant and plaintiff in reconvention is sufficient enough to cause an actual disturbance on the ground of the plaintiff's possession.
It is established as set forth in plaintiff's petition that deeds exist in the courthouse which cause a continuing disturbance on subject property. These are two deeds and a mortgage. So therefore, at the time of the disturbance, the Court finds that the plaintiff had possession of this property. The Court finds that at the time of this continuing disturbance of law that the plaintiff had possession for more than one year prior to the act of disturbance and that the suit was instituted within one year of the disturbance.
The Court finds that the plaintiff has proven possession of this property by one year and, really, also thirty years.
After carefully reviewing the entire record in this matter, we find that the trial judge correctly determined that the petitioners established the requisite elements of a possessory action and are entitled to possession of the property.

DAMAGES FOR FRIVOLOUS APPEAL
In answer to defendants' appeal, petitioners requested damages for frivolous appeal.
LSA-C.C.P. art. 2164 provides for damages for frivolous appeals. This provision is penal in nature and must be strictly construed. Pension Investment Corporation of America v. East Baton Rouge Parish School Board, 583 So.2d 598, 602 (La. App. 1st Cir.1991); Louisiana National Bank of Baton Rouge v. Belello, 577 So.2d 1099, 1103 (La.App. 1st Cir.1991). Appeals are favored, and damages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay or that the appealing counsel does not seriously believe in the position he advocates. Louisiana National Bank of Baton Rouge v. Belello, 577 So.2d at 1103; Fouchi v. Fouchi, 442 So.2d 506, 514 (La.App. 5th Cir.1983), writ denied, 445 So.2d 1235 (La.1984).
In the instant case, after a careful review of the entire record, we cannot say that frivolous appeal damages are warranted. While we do not find merit in defendants' allegations and have determined that defendants are not entitled to the relief, we cannot say that this appeal was taken solely for the purposes of delay or that appealing counsel does not seriously believe in the position he advocates.

CONCLUSION
For the above reasons, the judgment of the trial court, finding that petitioners are entitled to possession of the property, is affirmed. Defendants are cast for all costs of this appeal.
AFFIRMED.