GASKINS, J.
This appeal arises from a possessory action filed by the plaintiffs alleging a disturbance in their possession of a small tract of land east of Highway 519 in Claiborne Parish. The plaintiffs appeal from a trial court judgment granting the defendants’ second motion for summary judgment. For the reasons set forth below, we reverse the trial court’s granting of summary judgment.
FACTS
In March 1993, Jerry and Pamela Simpson purchased from Sarah Pate prop *654 erty described as SW lk (less the N /£ of NW of SW \) of Section 31, T19N, R5W, in Claiborne Parish for $100,000. According to Mr. Simpson, they were informed by the seller that the tract included the property presently in dispute.
In February 1999, Thomas Davidson and his brother Scott Davidson bought 200 acres of property, including the S of SE \ of Section 31, for $200,000 from members of the Tatum family. They planned to clear the land, sell the timber and build chicken houses. No survey of the property was made at the time of their purchase. In March 1999, they sold the timber on the property to a timber company which was to determine the boundaries of their property. After Mr. Simpson claimed to an employee of the timber company that he owned the land east of the highway, the timber company flagged out the disputed area and did not cut that timber.
On June 15, 1999, the Simpsons filed suit against the Davidson brothers and Thomas Davidson’s wife Sandra. The plaintiffs claimed to have possession of the disputed property, an area of about 6.2 acres. They Uasserted that their possession of this small tract east of the highway was disturbed by the defendants’ sale of timber which was later cut down and removed. The plaintiffs further stated that they had had possession of the property for a year prior to the disturbance.
In August 1999, the defendants filed a motion for summary judgment in which they disputed the plaintiffs’ assertion of quiet and uninterrupted possession for one year prior to the disturbance. In support of their motion, they filed several exhibits, including aerial photographs and affidavits. In the affidavits, several persons' — including the defendants’ predecessor in title— stated that the tract was possessed all the way to Highway 519. They also quoted a portion of Mr. Simpson’s deposition in which he stated that the only use he made of the disputed tract from the time he bought his property until January 1999 was to urinate in the privacy of the trees there while using his tractor nearby. (However, no such deposition excerpt is attached to the motion.) The plaintiffs filed a motion to strike certain of the mov-ants’ exhibits; however, the trial court denied the motion to strike. The plaintiffs also filed several documents in opposition to the motion for summary judgment. These included affidavits from a surveyor who surveyed the disputed property in 1999 at the request of the plaintiffs. Finding that there was a genuine issue of material fact, Judge Robert Butler denied the motion for summary judgment by a judgment signed in October 1999.
In August 2000, the defendants filed a second motion for summary judgment in which they asserted that the plaintiffs had not constructively | ^possessed the property for more than one year prior to the alleged disturbance. They filed additional evidence indicating that one of the defendants’ predecessors in title, Eva Meryl Bridges, had enclosed the disputed area with a fence, remnants of which still existed. They argued that Mrs. Bridges’ corporeal possession terminated any constructive possession by the plaintiffs’ ancestor in title. They also filed an affidavit by an employee of the Department of Transportation and Development who stated that Highway 519 had been in the Louisiana system of roads since taken in by legislative act in 1930.
Judge Jimmy Teat granted this motion for summary judgment. After reviewing the entire record, he concluded that the movants had pointed out an absence of factual support for elements essential to the plaintiffs’ case. Because the nonmov-ants had not produced actual support sufficient to establish that they would be able *655 to carry their burden of proof at trial, the court found that there were no genuine issues of material fact. Thus, the trial court found that summary judgment in favor of the defendants was appropriate.
The plaintiffs appeal.
SECOND SUMMARY JUDGMENT MOTION
The plaintiffs argue that Judge Teat committed reversible error by considering summary judgment when Judge Butler, his predecessor on the bench, had denied the earlier motion. They also contend that, if Judge Teat could consider the subsequent motion, he should have been restricted to reviewing only new evidence and arguments not presented to Judge Butler.
[4No authority supports the plaintiffs’ argument. Denial of the defendant’s initial motion for summary judgment does not bar a second summary judgment motion under the doctrine of res judicata. Young v. Dupre Transport Company, 97-0591 (La.App. 4th Cir.10/1/97), 700 So.2d 1156. See also Efferson v. Link Belt Corporation, 476 So.2d 528 (La.App. 1st Cir.1985); Bourgeois v. Duplessis, 540 So.2d 397 (La.App. 1st Cir.1989), writ denied, 541 So.2d 1392 (La.1989); and Melton v. Miley, 98-1437 (La.App. 1st Cir.9/24/99), 754 So.2d 1088, writ denied, 1999-3089 (La.1/7/00), 752 So.2d 867.
Consequently, we find that it was proper for Judge Teat to conduct his own de novo review the defendants’ second motion for summary judgment.
POSSESSION
The plaintiffs contend that the evidence filed by the movants failed to identify the possessor of the disputed property at the time of the alleged disturbance in March 1999. They maintain that they exercised possession of the property sufficient to constitute constructive possession of the whole tract. They also assert that the presence of Highway 519 was to their advantage because the state highway department’s actions, as a servitude owner, in maintaining the highway and its shoulder served as a continuous interruption of an adverse possessor’s act under La. C.C. arts. 3426 and 3429. The plaintiffs further argue that a genuine issue of fact remains as to whether their constructive possession of the disputed tract had been abandoned or evicted.
| ^Summary Judgment
Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Crocker v. Roach, 33,507 (La.App.2d Cir.8/23/00), 766 So.2d 672, writ denied, 2000-2684 (La.11/17/00), 774 So.2d 983. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1); Crocker v. Roach, supra. The burden of proof is still with the mover. La. C.C.P. art. 966 C(2).
If the moving party points out an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial; failure to do so results in no genuine issue of material fact and the proper granting of summary judgment. Smith v. General Motors Corp., 31,258 (La.App. 2d Cir.12/9/98), 722 So.2d 348; Crocker v. Roach, supra.
*656 Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court’s grant of the judgment. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191.

Possessor Action

La. C.C.P. art. 3655 defines a possessory action as an action “brought by the possessor of immovable property or of a real right therein to be | ^maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted.” Such an action shall be brought by “one who possesses for himself’ against “the person who caused the disturbance.” La. C.C.P. art. 3656.
According to La. C.C.P. art. 3658, in order to maintain the possessory action, the possessor must allege and prove the following:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.
La. C.C.P. art. 3659 describes the two kinds of disturbances of possession: disturbance in fact and disturbance in law. Particularly relevant in the instant case is “disturbance in fact” which is defined as “an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment.”
In a possessory action, the ownership or title of the parties to the immovable property or real right therein is not at issue. No evidence of ownership or title to the immovable property or real right therein shall be admitted except to prove: (1) the possession thereof by a party as owner; (2) the extent of the possession thereof by a party; or (3) the length of time in which a party and his ancestors in title have had possession thereof. La. C.C.P. art. 3661.
Generally, the possession necessary to maintain a possessory action must be either corporeal possession or civil possession preceded by corporeal possession by the plaintiff or his ancestors in title. La. C.C.P. art. 3660; Prieto v. St. Tammany Homesites, Inc., 602 So.2d 1111 (La.App. 1st Cir.1992). The corporeal possession required in a particular case is governed by the nature of the land and the use to which the land is put. Cheramie v. Cheramie, 391 So.2d 1126 (La.1980). With regard to the possession requisite for the commencement of acquisitive prescription, La. C.C. art. 3476 provides that the possession must be continuous, uninterrupted, peaceable, public, and unequivocal. Prieto, 602 So.2d at 1114.
When a party possesses part of an immovable by virtue of a title, he constructively possesses to the limits of his title. La. C.C. art. 3426; Winjum v. Duplantis, 393 So.2d 405 (La.App. 1st Cir.1980). However, he cannot depend on constructive possession to defeat adverse corporeal possession by another for a sufficient period of time to establish prescriptive title. Whitley v. Texaco, Inc., 434 So.2d 96 (La.App. 5th Cir.1982), writ denied, 435 So.2d 445 (La.1983). This follows from the rule that property cannot be legally possessed by adverse parties simul *657 taneously, and constructive possession cannot prevail over adverse corporeal possession. Tenneco Oil Company v. Pitre, 496 So.2d 502 (La.App. 1st Cir.1986), writ denied, 497 So.2d 1388 (La.1986).
1 sDiscussion
The issue presented here is whether the defendants as movants pointed out an absence of factual support for an essential element to the plaintiffs’ claim, namely their possession of the disputed strip of property.
Reviewing the matter de novo, we must examine the year prior to the disturbance in March 1999. The plaintiffs’ land to the west of the highway was fenced and used as a cow pasture. On the east side of the road, there was no existing fence; although an ancestor in title of the defendants had previously fenced their property all the way to the highway, only remnants of that fence still stand in a ditch. Thus, it appears that at that time there were no signs of corporeal possession of the land by anyone.
However, in the past, Mrs. Bridges, a predecessor in title of the defendants, had sold the timber all the way to the road on several occasions. On one of those occasions in the 1970’s, Mr. Pate, a predecessor in title of the plaintiffs, told the person cutting the timber, John Futch, that they had cut some of his trees. To avoid surveying expenses and “ill will” with Mr. Pate, Mr. Futch paid him a small sum of money. When Mr. Futch paid Mrs. Bridges for another timber deed in the 1980’s, he went to Mr. Pate and paid him a small amount for the trees he claimed to own on the strip of land east of the road. No effort was made to determine the amount of timber or land claimed by Mr. Pate. In his deposition, Mr. Futch stated that he did not think Mrs. Bridges was aware that he had paid anything to Mr. Pate.
As recently as the early 1960’s, the Bridges property was enclosed by a barb wire fence that extended all the way up to the road. According to the ^affidavit of Ruth Powell, the boundary was a fence running along the road next to the highway. According to the deposition of logger John Richard Wade, who worked with Mr. Futch, the old wire fence in the ditch bank was still in existence in 1981; he cut timber up to it. By the time the defendants purchased the Bridges property in 1999, the fence along the highway had fallen into disrepair.
While these facts are generally known, the record does not establish with any exactitude when the Bridges fence was built or, more importantly, when it fell into disrepair. Therefore, we must conclude that the issue of possession by any party had not been fully established. As they apparently hold by title, the plaintiffs’ possession of a portion could be considered as constructive possession of the whole tract. However, if the defendants’ predecessors corporeally possessed for a sufficient period to acquire title, that could defeat the plaintiffs’ constructive possession.
In summary, we find that the facts are such that summary judgment is not appropriate in the instant case. The matter requires further litigation and is accordingly remanded back to the trial court for further proceedings.
CONCLUSION
The summary judgment granted in favor of the defendants is reversed. The matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed to the defendants.
REVERSED AND REMANDED.