# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-129

CHARLES F. BOAGNI, III AND
SANDRA CLARK BOAGNI TRUST

VERSUS

ELTON SAM, JR.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 22-C-10332-D
HONORABLE D. JASON MECHE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Sharon Darville Wilson, and Guy E. Bradberry, Judges.

**AFFIRMED.**

Ogden L. Pitre
Pitre Law Firm, LLC
511 E. Landry Street
Opelousas, LA 70570
(337) 942-1900
COUNSEL FOR DEFENDANT-APPELLANT:
    Elton Sam, Jr.

William Simmons Sandoz
Attorney at Law
P.O. Box 579
Opelousas, LA 70571-0579
(337) 942-8956
COUNSEL FOR PLAINTIFFS-APPELLEES:
    Charles F. Boagni, III
    Sandra Clark Boagni Trust

**PICKETT, Chief Judge.**

In this possessory action, Elton Sam, Jr., appeals the judgment of the trial court granting the plaintiff, Charles Boagni, III, a judgment of possession.

## FACTS

On March 11, 2022, Mr. Boagni, individually and as the trustee of the Sandra Clark Boagni Trust, filed a Petition for Possessory Action against Mr. Sam. Mr. Boagni alleged that he had continuous possession of a certain 100-acre tract of land in St. Landry Parish for over a year. He further alleged that Mr. Sam disturbed his quiet possession on December 30, 2021, in two ways. Mr. Sam created a disturbance in fact by erecting a posted sign on the property and he created a disturbance in law by recording a Plat of Survey in the public records claiming ownership of a 20.738-acre tract, which lies entirely within the bounds of Mr. Boagni's property. Mr. Boagni acknowledged that the Plat of Survey[1] was recorded on September 15, 2020, but he only discovered the fact of the recordation on November 15, 2021. He alleged that the recordation, which identifies the 20.738-acre tract as owned by someone other than Mr. Boagni, disturbed his possession and caused the tax assessor to assess taxes on the property to members of Mr. Sam's family, creating a double assessment of that tract. Mr. Boagni's prayer for relief sought a judgment recognizing him as the possessor of the property in question and ordering Mr. Sam to assert an adverse claim of ownership to the property be precluded from thereafter asserting ownership. Mr. Boagni also sought to have Mr. Sam remove any indication of his possession from the property

---

[1] The document was titled "Plat of Survey for the Estate of Julien Edwards et al showing a 20.738 acre tract of land situated in Section 67, Range 4 East, St. Landry Parish, Louisiana."

and to have the assessor ordered to cancel the double assessment. Finally, Mr. Boagni sought reasonable damages for the disturbance of his possession.

Mr. Sam answered, denying the allegations of the petition.

On March 14, 2023, Mr. Boagni filed a Motion to Convert Proceeding to a Petitory Action and Authorize Amended Petition. Mr. Boagni alleged that at a status conference, Mr. Sam indicated that one of his relatives would be asserting an ownership interest in the property at issue, and, therefore, Mr. Boagni desired to convert the proceeding to a petitory action. The trial court did not sign the attached order and deferred a ruling pending another status conference. Mr. Boagni filed an Amended Motion to Convert Proceeding to a Petitory Action and Authorize Amended Petition on June 5, 2023. The trial court set a hearing on the amended motion on July 17, 2023. Before the hearing, Mr. Sam filed a memorandum opposing the amended motion to convert to a petitory action, stating that Mr. Sam has never claimed ownership of the disputed property himself. Mr. Sam also cited La.Code Civ.P. art. 3657(A), which states:

> The plaintiff shall not cumulate the possessory action with either the petitory action or a declaratory judgment action to determine ownership. If the plaintiff does so, the possessory action does not abate, but the defendant may object to the cumulation by asserting a dilatory exception. If, before executory judgment in the possessory action, the plaintiff institutes the petitory action or a declaratory judgment action in a separate suit, the possessory action abates.

The trial court denied the amended motion to convert to a petitory action at the hearing on July 17, 2023.

Prior to trial, Mr. Boagni filed a pleading entitled Peremptory Exceptions. Therein, he pled that because he has had possession of the property for over 40 years, he gained ownership of the property by acquisitive prescription. Mr.

2

Boagni's pleading clarifies that "[t]he effect of this exception does not deal with title, but is filed to override any claim of ownership by deed filed on behalf of any third party." Mr. Boagni also included an exception of no cause of action, alleging that Mr. Sam has no ownership interest in the property at issue. Finally, Mr. Boagni brought an exception of no right of action, alleging that Mr. Sam had no authority to act on behalf of any party who might have an ownership interest in the property. Mr. Sam opposed these peremptory exceptions, arguing that a peremptory exception is an improper procedural tool for a plaintiff to file against a defendant who has not filed a reconventional demand. The trial court ordered the exceptions to be heard at the trial on the merits.

The trial in this matter took place on October 31, 2023. At the conclusion of the trial, the court took the matter under advisement. The trial court issued reasons for ruling on November 16, 2023. The trial court reached the following conclusions:

1. Boagni's *Peremptory Exceptions of Prescription, No Cause of Action, and No Right of Action* are overruled.

2. That Boagni had possession of the 100 acres, more or less, at the time of the disturbance, that the possession was quiet and uninterrupted for more than one (1) year prior to the disturbance, and the suit was initiated timely. Thus, Boagni is entitled to a judgment of possession.

3. That Boagni failed to introduce any evidence of damages as prayed for in his *Petition for Possession*. La. C.C.P. art. 3662(3). Thus, the Court denies an award of damages.

The trial court signed a judgment in conformity with its written reasons on December 27, 2023, ordering the following:

A) There be Judgment in favor of CHARLES F. BOAGNI, III AND SANDRA CLARK BOAGNI, TRUST, granting their Petition for Possession and acknowledging their possession of the 100 acres, more or less, being more particularly described as:

3

A certain tract or parcel of land, together with all buildings and improvements thereon, situated in Section 67, Township Four South (T-4-S), Range Four East (R-4-E), St. Landry Parish, Louisiana, containing ONE HUNDRED (100) ACRES, MORE OR LESS, and being bounded, now or formerly, as follows: North by Christoval Joubert and Alcide Joubert; South by Alcide Joubert, Thelma Pucheu, and Christoval Joubert; East by Bayou Cocoderie [sic] and Vincent Mosely; and West by the centerline of the road, or property of Elzena Joubert Frank, Woodrow Joubert, Alfred Thomas and Alcide Joubert.

The above described property includes:

20.738 ac N Boagni S Lots 6-8 E. Bayou Cocodrie W40' R/W True Vine Road in Sec. #67, T-4-S, R-4-E

B) The St. Landry Parish Assessor remove the name of Mrs. Julien Edwards c/o Elton Sam, 207 Gintilly Road, Opelousas, LA 70570-0000 on parcel #0500528500 with notice number 2022-35584 being more particularly described as:

20.738 ac N Boagni S Lots 6-8 E. Bayou Cocodrie W40' R/W True Vine Road in Sec. #67, T-4-S, R-4-E

C) The St. Landry Parish Clerk of Court erase, pursuant to this judgment, as well as make a notation on the Plat of Survey recorded under Original Act #1204977 of the records of St. Landry Parish, Louisiana, that this Plat of Survey is cancelled pursuant to judgment.

D) Defendant, Elton Sam, shall not trespass on the above described property.

## ASSIGNMENTS OF ERROR

In his brief to this court, Mr. Sam asserts four assignments of error:

1.     The trial court erred in finding that Appellees were in possession of the disputed 20.738[-]acre tract, which it ruled was a part of a larger 100 acres of land.

2.     The trial court erred in finding that Appellees and their ancestors in title had such possession of the disputed 20.738[-]acre tract quietly and without interruption for more than a year immediately prior to the disturbance.

3.     The trial court erred in failing to consider the legal implication that Appellees were co-owners of the disputed 20.738[-]acre tract as well as the 100 acres of land.

4. The trial court erred in not ordering in its judgment that Appellant must assert his adverse claim of ownership of the immovable property or real right therein in a petitory action to be filed within a delay to be fixed by the court not to exceed sixty days after the date the judgment becomes executory, or be precluded thereafter from asserting the ownership thereof, as Appellees prayed for in their original petition.

## **<u>DISCUSSION</u>**

Louisiana Code of Civil Procedure Article 3655 sets forth the purpose of a possessory action:

> The possessory action is one brought by the possessor or precarious possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted.

Louisiana Code of Civil Procedure Article 3658 sets forth the elements of a possessory action:

> To maintain the possessory action the plaintiff shall allege and prove all of the following:
>
> (1) The plaintiff had possession or precarious possession of the immovable property or real right therein at the time the disturbance occurred.
>
> (2) The plaintiff and his ancestors in title, or the person for whom the plaintiff possesses precariously and that person's ancestors in title, had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud.
>
> (3) The disturbance was one in fact or in law, as defined in Article 3659.
>
> (4) The possessory action was instituted within a year of the disturbance.

Louisiana Code of Civil Procedure Article 3659 defines a disturbance in fact or in law:

A. Disturbances of possession that give rise to the possessory action are of two kinds: disturbance in fact and disturbance in law.

B. A disturbance in fact is an eviction, or any other physical act that prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or that throws any obstacle in the way of that enjoyment.

C. A disturbance in law is the occurrence or existence of any of the following adversely to the possessor of immovable property or a real right therein:

(1) The execution, recordation, or registry, after the possessor or his ancestors in title acquired the right to possess, of any instrument that asserts or implies a right of ownership or right to the possession of the immovable property or a real right therein.

(2) The continuing existence of record of any instrument that asserts or implies a right of ownership or right to the possession of the immovable property or a real right therein, unless the instrument was recorded before the possessor and his ancestors in title commenced possession.

(3) Any other claim or pretension of ownership or right to the possession of the immovable property or a real right therein, whether written or oral, except when asserted in an action or proceeding.

Possession for the purpose of a possessory action is defined by La.Code Civ.P. art. 3660(A), which states:

A person is in possession of immovable property or of a real right therein, within the intendment of the articles of this Chapter, when the person has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper.

The burden of proof in a possessory action lies upon the plaintiff to establish the essential elements thereof. La.Code Civ.P. art. 3658; *Chaney v. State Mineral Bd.*, 444 So.2d 105 (La.1983). Whether the acts of the plaintiff constitute possession is a factual determination of the trial court which we will not disturb on appeal unless it is clearly wrong. *Romar v. Est. of Gay*, 454 So.2d 431 (La.App. 3 Cir. 1984).

At the trial, Mr. Sam testified that he did not own the property or have possession of the property. He testified that he was acting on behalf of his mother and her siblings, who trace their ownership of the disputed property to an 1896 deed. His mother and her siblings trace their ownership back to Mrs. Julien Edwards, Mr. Sam's great-great-grandmother. Mr. Sam acknowledged that Mr. and Mrs. Edwards' successions were opened in 1948 and 1950, but no succession representative had ever been appointed.

Mr. Sam testified that his family members had been paying taxes on the property since Mrs. Edwards died. They constructed no buildings or fences on the property. Mr. Sam knew that Charles Ray Jones rebuilt the fence on the property when he leased the land from Mr. Boagni. Mr. Sam testified that he hunted and fished on the property at issue since he was seven-years old, or for forty-seven years.

Mr. Sam hired Robert Wolfe to survey the property that belonged to his great-grandmother. He had the survey recorded in the clerk's office and brought the survey to the assessor's office to review. Mr. Sam identified thirty-eight pages of tax records from 1955 through 2022. From 1955 through 1998, the description of the property was "11 AC N LAZARO S COMEAU E LAZARO W SOILEAU." Beginning in 2000 through 2018, the description of the property was "11 AC N & E LAZARO S COMEAU W SOILEAU IN SEC 43 T-4S R-3E & SEC 67 T-4S R-4E." In 2019, the same parcel number was identified on the tax receipt as "25 ARPENTS N & E LAZARO S COMEAU W SOILEAU IN SEC 43 T-4S R-3E & SEC 67 T-4S R-4E." In 2022, the assessor changed the description of the same parcel number, identifying it as "20.738 AC N BOAGNI S LOTS 6-10 E BAYOU COCODRIE W 40′ R/W TRUE VINE RD IN SEC 67 T-4S R-4E." This

description matched the property identified as belonging to Julien Edwards on the survey done by Mr. Wolfe.

Mr. Sam also testified that one of his family members had timber cut from the property "probably about thirty (30), thirty-five (35) years ago." He also testified that his grandmother received oil and gas royalty payments on the property, and he identified Oil, Gas, and Mineral Leases executed by several lessors, including his grandmother, Selina Sims Johnson, from 1977 and 1978, with the following description of the property:

Township 4 South, Range 4 East; Section 67:

25 arpents, more or less, bounded now or formerly:

Northeast by Bayou Cocodrie or Harry V. Mosely;
Southeast by Alcide Joubert, Mary Lynn Pucheau and Christoval Joubert;
Southwest by Alcide Joubert and Fremont Joubert;
Northwest by Fremont Joubert.

Being the same land deeded by Alexander Vanright to Louis Vanright and Julien Edward by instrument dated 1-27-1896 and recorded in COB J-3 at pages 86 and 87, reference to which deed is here made for all purposes.

Mr. Sam also identified a check written to his grandmother from the lessees in 1988. Finally, Mr. Sam testified that he remembered an old fence line that ran along the north boundary of the property, but it was no longer a continuous fence line. He also testified that he had seen Mr. Jones' cattle on the disputed property.

Mr. Jones testified that, at the time of trial, he had leased property from Mr. Boagni for forty-two years to run his cows. When the written lease expired, he continued to pay yearly to keep his cattle. Mr. Jones testified that he lived in the area all his life. The property he leased from Mr. Boagni was already fenced when he began leasing it, and it had been fenced since he was a little boy. He indicated

that he had repaired the fence along Vidrine Road to protect his cattle. During his testimony, Mr. Jones marked in yellow highlighter the fence line on the survey prepared by Mr. Wolfe. The entirety of the 20.738 acres is included in the area that Mr. Jones leased from Mr. Boagni. Mr. Boagni ran his cattle on the property for forty-two years.

Mr. Jones also testified that he remembered someone cutting timber from a narrow strip of land in the front of the property "a long time ago." He explained that that is when he learned that "one little strip of land belonged to someone else besides Freemont Joubert, [who] owned the property before Mr. Boagni and Fakouri bought it."

Karl Reiners testified that he was given access to the property by Mr. Boagni five years ago to hunt. His wife works for Mr. Boagni. He regularly goes to the property to walk, hunt, and shoot by himself or with his wife. Mr. Boagni signed an affidavit giving him permission to use the land. Mr. Reiners noticed no new structures or fences on the land in the last five years. He did, at some point, remove posted signs hung by a neighbor, Mr. Vidrine.

Mr. Reiners testified that he posted signs on the property, and Mr. Sam called him to inquire about the signs. Mr. Sam explained his family connection to the land and Mr. Reiners told Mr. Boagni about his conversation with Mr. Sam.

Mr. Boagni testified that he owned the 100-acre property for forty-two years. When he purchased it with Mr. Fakouri, he initially intended to build a camp on the property, and he inspected it. Soon thereafter, he leased the entire property to Mr. Jones to graze his cattle. He never charged Mr. Reiners to hunt on the property.

Mr. Boagni testified that he filed this lawsuit when the assessor's office used the survey created by Mr. Wolfe to assess taxes on the twenty-five arpent tract to Mr. Sam's family. He admitted that the original abstract from when he purchased the property may not have gone all the way back to 1895.

Mr. Wolfe, the surveyor hired by Mr. Sam, testified about the information he discovered in his research. He explained that the 2016 tax receipt described an eleven-acre tract of land in Sections 43 and 67, but those sections are not adjacent. In 1883, Onezenne Fontenot sold a twenty-five arpent tract of land to Alexander Vanwright. Alexander Vanwright sold the same tract of land to Julien Edwards and Louis Vanwright in 1896. Louis Vanwright later sold his one-half undivided interest in the land to a Mr. Joubert, and the interest in that land is in Mr. Boagni's chain of title. Mr. Wolfe further testified that he sent the information that he gathered in completing his survey to the assessor at the assessor's request.

Finally, Mr. Sam called Russell Myers to testify. He knew Mr. Sam's father and hunted the property with Mr. Sam. He testified that he understood that the land belonged to Mr. Sam's family. On cross-examination, Mr. Myers testified that he was unaware of any proof of Mr. Sam's ownership. He also stated that he saw cattle on the property.

The evidence shows that Mr. Boagni clearly proved actual possession when he purchased the property over forty years ago and continuous civil possession through his lessee, Mr. Jones, for the same amount of time. The trial court's findings on these issues are not manifestly erroneous. Mr. Sam does not assign as error that this possessory action was filed untimely. The only issue is whether Mr. Boagni had possession for one year prior to the institution of this action and whether that possession benefits Mr. Sam.

Based on the abstracts presented, Mr. Boagni owns an undivided interest in the 20.738-acre tract. Mr. Sam's ancestors on his mother's side own an undivided interest in the 20.738-acre tract. Importantly, Mr. Sam himself owns no interest in the land, and he has offered no evidence that he has the authority to act on behalf of any of his family members. Mr. Sam, therefore, is not a co-owner of an undivided interest. Thus, his argument that Mr. Boagni's possession is presumed to be for the benefit of his co-owners, which is legally correct, does not extend to Mr. Sam, who is not one of those co-owners.

The filing of the survey by Mr. Wolfe is clearly a disturbance in law, as it asserts a right of ownership in the heirs of Julien Edwards. Mr. Sam argues that the Julien Edwards heirs have paid taxes or executed mineral leases or sold timber on the property and that those acts of civil possession should be considered as acts of Mr. Sam's possession. Because Mr. Sam does not have title to the property, Mr. Sam must show that he himself has actual possession of the property in order to defeat the possessory action filed by Mr. Boagni. The trial court found that Mr. Sam's acts of hunting and fishing on the property were not sufficient acts of actual possession within enclosures. That finding is not manifestly erroneous.

Mr. Sam cites *Norton v. Addie*, 337 So.2d 432 (La.1976), as support for his claim that his family had constructive possession of the property by paying taxes, leasing the mineral rights, and cutting timber on the 20.738-acre tract. In *Norton*, Mr. Norton's father built a fence in 1904 on the boundary of the property he shared with Mr. Addie. The fence extended onto Mr. Addie's land. Mr. Norton's father, and then Mr. Norton, maintained the fence and leased the land to graze cattle for many years. Reversing the lower courts, the supreme court found that Mr. Addie's

11

constructive possession by means of title to the property was lost by Mr. Norton's corporeal detention of the property.

Mr. Sam's argument is unpersuasive for two reasons. First, Mr. Sam is neither the owner nor possessor of the land. Second, Mr. Sam argues that his family's situation is akin to Mr. Norton's situation. In fact, Mr. Boagni proved actual corporeal possession of the property for more than a year at the time of disturbance, which makes his position more akin to Mr. Norton's position, while the owners of the undivided interest in the 20.738-acre tract who claim constructive possession are like Mr. Addie, who the supreme court found was the losing party in *Norton*.

Mr. Sam's first three assignments of error lack merit.

Finally, Mr. Sam argues that the trial court erred by failing to give Mr. Sam sixty days to assert an adverse claim of ownership. La.Code Civ.P. art. 3662. Mr. Boagni did pray for such relief in his petition, but the judgment prepared by Mr. Boagni's counsel and signed by the trial court did not include that relief. Inasmuch as Mr. Sam admitted that he did not own the property, allowing Mr. Sam sixty days to assert an ownership interest would be an exercise in futility. We find no error in the judgment of the trial court.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to Mr. Sam.

**AFFIRMED.**

12